Jones, J.
We uphold the constitutionality of chapters 29 and 30 of the Laws of 1976. Those chapters, amending section 21 of the Election Law, effective March 11, 1976, establish a procedure whereby the preference for a presidential candidate of persons running for election as delegates and alternates to the 1976 conventions of the national political parties may be listed on the April, 1976 primary ballots. The case comes to us on direct appeal from a judgment of Supreme Court which also declared these chapters constitutional. (NY Const, art VI, § 3, subd b, par [2]; CPLR 5601, subd [b], par 2.)
This proceeding was instituted and denominated below as a CPLR article 78 proceeding. Such a proceeding would be an inappropriate procedural vehicle for examination-of the constitutionality of legislative enactments. (Matter of Kovarsky v Housing & Development Admin, of City of N. Y., 31 NY2d 184, 191-192, and cases cited.) The present proceeding, although labeled an article 78 proceeding, is in fact indistinguishable from a special proceeding under section 330 of the Election Law, a section peculiarly designed for judicial review with respect to controversies arising in the election process.* We so consider it.
The procedures and requirements prescribed in chapters 29 and 30 may be summarized as follows. If the rules of a national political party so provide, a candidate for election as a delegate or alternate to the national convention of that party (a district candidate) may file with the Secretary of State "a certificate of preference naming the particular presidential candidate whom such district candidate intends to support” (§ 21, subd 4, par a). If the particular presidential candidate thereafter timely files with the Secretary of State a certificate, signed by such candidate or by his duly authorized agent, attesting that such candidate agrees that his name may appear on the ballot at the primary election with the name of the district candidate, then the name of the district candidate shall appear on the ballot as supporting that presidential *84 candidate (§ 21, subd 4, par c). If no certificate of preference is filed by the district candidate or if the certificate of preference is invalid, i.e., one as to which no supporting certificate of consent is timely filed by the presidential candidate, then the district candidate’s name shall appear on the ballot as "uncommitted” (§ 21, subd 4, par b).
The individual petitioners in this proceeding are district candidates who, pursuant to the amendments here under challenge, timely filed certificates of preference designating Hubert H. Humphrey as the presidential candidate whom they intend to support. Such certificates of preference were rendered invalid, however, by the fact that their presidential candidate did not file the requisite supporting certificates agreeing to have his name appear on the ballot with the petitioners. Accordingly, petitioners’ names will appear on the April, 1976 primary ballot as "uncommitted”.
Petitioners’ contentions do not fall into easily identified categories. Rather, they assert in conclusive terms that the new statutory provisions deprive them of equal protection and due process of law which are assured them under our State and Federal Constitutions.
It is useful first to recognize two propositions which are particularly pertinent to the assertions now advanced by these petitioners. First, a possible candidate may disappoint the wishes of his supporters and deny to them the right to have his name associated with theirs as the candidate of their choice for the presidency of the United States (Matter of Ginsberg v Lomenzo, 23 NY2d 94). Thus, the arguments of petitioners that the present statutory plan operates to deprive them of an opportunity to inform the voters in the primary which presidential candidate they will support at the national convention, are unavailing. It is inaction on the part of their candidate, rather than the statutory provisions, which frustrates the accomplishment of their objective.
Second, "[sjtates have broad authority, absent valid congressional legislation, to establish rules regulating the manner of conducting both primary and final elections * * * [and to] decide what name, designation and other information appears on the ballot”. (New York State Democratic Party v Lomenzo, 460 F2d 250, 251, and cases cited; Fallon v State Bd. of Elections of State of N. Y., 408 F Supp 636; Williamson v Fortson, 376 F Supp 1300, 1301; Matter of Walsh v Boyle, 179 App Div 582.) We reject petitioners’ argument that it is fatally *85 misleading to list them on the ballot as "uncommitted” when they have indicated their intention to support Mr. Humphrey notwithstanding that he is not now prepared to accept their support. The Legislature determined that the names of the district candidates should appear on the ballot in either of two categories—those who are "committed”, i.e., those who have the approval of their candidate to say that they support him, and those who are "uncommitted”, i.e., either those who do not support any particular candidate or those whose candidate declines to permit his name to appear on the ballot. Petitioners cannot complain that provision was not made for more than these two categories. "There are many types of information which could serve to reduce voter confusion if they were included in the ballot. The determination of what should be included is a state function. Given the wide latitude which the state has in deciding the manner of conducting elections, and, therefore, both the form and the content of the ballot, [the] prohibition against [designation of a district candidate’s preference] appearing on the ballot does not raise a substantial constitutional question.” (New York State Democratic Party v Lomenzo, 460 F2d 250, 251-252, supra; Fallon v State Bd. of Elections of State of N. Y., 408 F Supp 636, supra.)
We turn then to the arguments of petitioners on which they base their claims of denial of equal protection or due process of law, or both, noting that it is only constitutional questions which we may consider and determine on this direct appeal (NY Const, art VI, § 3, subd b, par [2]). In our view this case should not be approached as involving either equal protection or due process issues. The question is whether there has been an unreasonable interference with the fundamental right to vote guaranteed by our State and Federal Constitutions, a right antecedent to the modern evolution of equal protection and due process analysis. The right and privilege of electoral franchise is instinct to the republican form of government guaranteed by the Federal Constitution, and our Constitutions cannot be read without an awareness of the permeating recognition of this right (US Const, art IV, § 4; cf. Reynolds v Sims, 377 US 533, 554-555; Ex parte Yarbrough, 110 US 651). But even under the formulation of equal protection and due process issues tendered by appellants and accepted by some courts, the statute would meet a rational basis test. The provisions under challenge do not "inhibit entry into the *86 political arena, deny the right to vote, or debase the weight of some votes.” (New York State Democratic Party v Lomenzo, 460 F2d 250, 251, supra.)
There is no substance to the contention that the 1976 legislation applies to the Democratic but not to the Republican Party. The statute applies equally to both parties. Whether the procedures prescribed in the statute become operative depends on the rules of the national party itself (§ 21, subd 4). Such rules are entitled to the greatest if not paramount weight in determining eligibility to serve as a delegate to a national party convention (Cousins v Wigoda, 419 US 477). Even if the statute applied only to one party, there would be no constitutional infirmity (cf. Graham v Fong Eu, 403 F Supp 37, affd 423 US 1067).
We conclude that there is a sound basis for each of the detailed provisions of the statutory plan on which petitioners would hinge their tenous arguments—for instance, that by its terms this statutory plan applies only to the year 1976; that the time schedules of the statute are so constrictive as not to give adequate notice and opportunity to comply; that application of the plan may necessitate some adjustments by the Board of Elections in the position of district candidates on the ballot.
In sum after examination we find all of petitioners’ contentions to be without merit and conclude that there is no constitutional infirmity in chapters 29 and 30 of the Laws of 1976.
Accordingly, the judgment of Supreme Court should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
Judgment affirmed, without costs.

 In passing we note the significant distinction on direct appeals under CPLR 5601 (subd b, par [2]) between our power to overlook technical error in the denomination or characterization of special proceedings and the absence of authority to convert a special proceeding to a plenary action for declaratory judgment under CPLR 103 (subd [c]). (Matter of Merced v Fisher, 38 NY2d 557.)