George **WILLIAMSON**

v.

**Ben W. FORTSON, Jr., as Secretary of State of the State of Georgia and as a member of the State Election Board.**

**Civ. A. No. C74–1030A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

June 19, 1974.

Thomas B. Benham, Atlanta, Ga., for plaintiff.

Arthur K. Bolton, Atty. Gen., Dorothy Y. Kirkley, Asst. Atty. Gen., Atlanta, Ga., for defendant.

Before BELL, Circuit Judge, and EDENFIELD and O'KELLEY, District Judges.

PER CURIAM:

In the above-styled suit the plaintiff, a duly qualified candidate for the Republican nomination in District 45 in the Georgia House of Representatives, seeks to overturn the incumbency provisions of Georgia Code § 34–1102(c) as violative of the equal protection clause of the Fourteenth Amendment and to have this court permanently enjoin the defendant, the Georgia Secretary of State, from enforcing the offending portion of the statute.

Jurisdiction is grounded in 28 U.S.C. § 1343(3). The statute under attack is one of statewide application and as required by 28 U.S.C. § 2281, Chief Judge John R. Brown of the Fifth Circuit has designated this three-judge district court to hear this action.

The plaintiff's complaint centers on the requirement of Ga.Code Ann. § 34–1102(c) that "[t]he incumbency of a candidate seeking party nomination for the public office he then holds shall be indicated on the ballots" for the primary election. There is no such requirement for the form of the general election ballots. Ga.Code Ann. § 34–1103 (1970).

Two years ago this court was presented with this precise issue. Stoner v. Fortson, 345 F.Supp. 1369 (N.D.Ga. 1972). The merits of that case were never reached. The court first held that at the time suit was filed the election was imminent and that equity would not allow the court to interfere with the ongoing state electoral process. The court did, however, retain jurisdiction in order that the plaintiff could renew his prayer for relief as to the later primary runoff election. Stoner v. Fortson, 345 F.Supp. 1369 (N.D.Ga.1972). However, the plaintiff received insufficient votes in the first primary to be entitled to participate in the runoff primary, and his suit was eventually dismissed for lack of prosecution. Order of December 18, 1972.

██ Courts normally subject legislation challenged under the equal protection clause to a standard of rationality. The state's goal need only be reasonable, and the statute need not be a perfect method to achieve the goal. If the court can conceive of a rational viewpoint that justifies the statute, it will stand.[1] When legislation affects certain fundamental liberties and rights, however, it is subjected to a stricter constitutional test—only a compelling state interest will suffice. The parties are agreed that in order to pass constitutional muster the statute in question here need only satisfy the requirement that it have a rational basis. Bohus v. Board of Election Comm'rs., 447 F.2d 821 (7th Cir. 1971). This case, however, deviates slightly from the typical equal protection case in that the denial of equal protection alleged[2] involves a different category of citizens than the rational basis which the state advances in support of the statute.[3]

While it is clear to the court that the statute does require a difference in the treatment of incumbents and challengers, it is far from clear that this discrimination is invidious or that no rational standard can be advanced in support of the statute.

An extensive survey of the case law reveals no decision whatsoever which is in point and is controlling on this court and discovers a real paucity of decisions which are even arguably in point. Per-

---

1. For example, in McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), the Court upheld Maryland's Sunday closing law despite numerous exceptions allowing certain categories of stores to remain open. The Court acknowledged that this was not the best way to achieve the state goal, but upheld the statute because it was a rational way to promote Sunday as a day of rest.

2. An alleged discrimination between incumbent candidates and challengers in the primary election.

3. The state contends that identification of incumbents provides the voters with useful information which aids them in casting their ballots.

haps the best starting point for analysis of the issue is a recent case in which the Second Circuit spoke generally to the discretion vested in the states to determine what information will be provided to the voter by the ballot. In New York State Democratic Party v. Lomenzo, 460 F.2d 250 (2d Cir. 1972), the Second Circuit panel rejected an attack on the constitutionality of a New York election law provision that prevented candidates seeking election as delegates to the Democratic National Convention from indicating on the ballot which presidential candidate they preferred. The court reasoned that:

"States have broad authority, absent valid congressional legislation, to establish rules regulating the manner of conducting both primary and final elections.

"The New York Election Law does not inhibit entry into the political arena, deny the right to vote, or debase the weight of some votes. All that is charged is that New York fails to authorize a particular kind of information, which appellants consider desirable, to appear on the ballot. Each state may, however, decide what name, designation, and other information appears on the ballot, provided no unconstitutional objective is facilitated thereby.

"There are many types of information which could serve to reduce voter confusion if they were included in the ballot. The determination of what should be included is a state function." 460 F.2d 250, 251 (Citations omitted).

This court finds itself in agreement with this broad view of the discretion vested in the states and finds this reasoning even more persuasive where, as here, the plaintiff seeks to deny information to the voter which the state wishes to provide rather than to compel the furnishing of additional information.

This court has found only one federal decision in which an attempt by the state to furnish information to the voter was found to be constitutionally impermissible. In Anderson v. Martin, 375 U.S. 399, 84 S.Ct. 454, 11 L.Ed.2d 430 (1964), the Court struck down a Louisiana statute requiring that the *race* of each candidate be designated on the ballot. The discrimination present in *Anderson* was grounded on the suspect classification of race and as a result the statute would have had to meet the "compelling state interest" test in order to stand. This decision is, therefore, inapposite in litigation, as here, in which the statute need satisfy only the "rational basis" test.

The plaintiff finds support for his position in Netsch v. Lewis, 344 F.Supp. 1280 (N.D.Ill.1972). In that case a three-judge court in Illinois held unconstitutional a state statute which required that incumbents be given priority on the ballot and that in the event there was more than one incumbent seeking an office they should be listed in order of seniority. The statute questioned in *Netsch* did not identify the incumbent as such on the ballot; it only granted top billing. Under Georgia law, the incumbent is listed on the primary ballot in alphabetical order among the other candidates. Ga.Code Ann. § 34–1102(c) (1970). In addition, the published opinion in *Netsch* is devoid of reasoning and its citations refer the researcher to cases which are not even arguably in point. This court finds *Netsch* unpersuasive in deciding the instant case.

The court has found no federal decisions in which a state statute allowing the designation of incumbents as such on the ballot has been struck down as unconstitutional. The plaintiff directs the court's attention to two state decisions. Rees v. Layton, 6 Cal.App.3d 815, 86 Cal.Rptr. 268 (1970), is admittedly in point. This court, however, finds itself in disagreement with the conclusion of the California appeals court that identification of incumbents on the ballots does not have the effect of providing information to the voters. Wells v. Kent County Board of Election Comm'rs., 382

Mich. 112, 168 N.W.2d 222 (1969), reaches the result plaintiff seeks but does so on the basis of a provision in the Michigan Constitution which has no counterpart in the United States Constitution.

▮▮ In conclusion, then, this court is presented with an issue on which there is no controlling authority. The court finds that the statute in question requires a discrimination by the state between classes of candidates which is sufficient to invoke the scrutiny of a federal court to determine whether there is a violation of the Fourteenth Amendment's equal protection clause. This discrimination, however, is not grounded in a suspect classification, and the statute need only satisfy the "rational basis" test in order to avoid constitutional infirmity. The state has advanced as a justification for the statute a claim that it represents an attempt to provide useful information to ill-informed voters. The state has wide discretion to decide what information should be presented to the voters. The court agrees with the plaintiff that it would be desirable for all voters to be well informed in making their electoral choices. The court cannot, however, agree that it is irrational for the state to attempt to provide an ill-informed voter with some minimum quantum of information on which to base his choice among the candidates. The fact that this statute may not be the best possible method to achieve the state's objective is not sufficient to invalidate the statute under the rational basis test. McGowan v. Maryland, *supra*.

Accordingly:

The temporary restraining order issued May 30, 1974, is hereby dissolved.

The plaintiff's motion for a declaration of the unconstitutionality of the incumbency provision of Georgia Code § 34–1102(c) (1970) and for a permanent injunction against its enforcement is denied.

The court hereby enters judgment against the plaintiff and in favor of the defendant.